NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0366n.06
Filed: May 24, 2006

05-1072

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CLAUDE BARNES, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GUY, DAUGHTREY, and CLAY, Circuit Judges.

**MARTHA CRAIG DAUGHTREY, Circuit Judge.** The defendant, Claude Barnes, appeals from his convictions for distribution of more than five grams of crack cocaine and distribution of more than 50 grams of crack cocaine, as well as from the resulting concurrent 168-month sentences imposed by the district court prior to the Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005). Barnes contends that the district court erred in allowing the introduction of certain evidence and in calculating his sentence. For the reasons set out below, we find no error in connection with Barnes's conviction, but we vacate his sentence and remand the matter to the district court for re-sentencing under an advisory guidelines scheme, as required by *Booker*.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Trial testimony established that Officer Frank Mobley of Lansing, Michigan's police department developed a relationship with Nicholas Smith using Smith as a go-between in Mobley's efforts to purchase cocaine powder and crack cocaine. Smith was, however, unaware that Mobley was in fact an undercover officer involved in an operation to arrest illegal drug dealers.

Beginning in January 2004, Mobley would meet with Smith, usually at a local Quality Dairy store, and Smith would call a supplier by dialing (517) 505-3913 on a cell phone. Within minutes, an individual identified as defendant Barnes would arrive on the scene and Smith would exchange money provided by Mobley for the illegal controlled substances. Barnes would then drive away from the location and Mobley would drop off Nicholas Smith before returning to the police station with the contraband.

On February 12, 2004, after using Nicholas Smith to facilitate three prior drug purchases, Mobley himself called the (517) 505-3913 telephone number he had seen Smith dial and arranged with Barnes to meet at the Quality Dairy so that the undercover officer could purchase two ounces of crack cocaine from the defendant for $1,500. Aware of Mobley's earlier dealings with Smith and Barnes, the local police had also set up surveillance of a residence at 2628 East Cavanaugh, approximately one and one-half blocks from the Quality Dairy rendezvous point, in an effort to identify and observe Smith's supplier. Shortly after Mobley's call, officers watching the East Cavanaugh address

observed a black male leave the house, get into a green Oldsmobile with license plate number USA 683, and drive away in the direction of the Quality Dairy. The defendant, driving a green Oldsmobile with licence number USA 683, met Mobley at the Quality Dairy moments later and beckoned Mobley to follow him to a nearby apartment complex. At that location, the undercover officer got into the Oldsmobile and exchanged money for 20.94 grams of crack cocaine.

That entire transaction was also observed by Detective Sergeant Robyn Lynde of the Michigan State Police, who was conducting surveillance at the Quality Dairy at the time Barnes met Mobley there on February 12, 2004. Furthermore, the officers watching the house at 2628 East Cavanaugh noticed that the green Oldsmobile returned to the residence a few minutes after the completion of the drug transaction and that the same person who left the house in the green Oldsmobile then reentered the dwelling.

Similarly, on April 12, 2004, the police had the house at 2628 East Cavanaugh under surveillance after defendant Barnes called Mobley's cell phone shortly before 7:00 p.m. and offered to sell the undercover officer three ounces of crack cocaine for $2,350. During that conversation, Barnes related that Smith had recently died of a drug overdose and that the defendant was wary of dealing with Mobley in the absence of the usual intermediary. Nevertheless, the two men arranged to meet at a Citgo gas station approximately two blocks from the East Cavanaugh residence. Officers engaged in the surveillance of the East Cavanaugh home then observed that Barnes and another individual left the house in

a black Chevrolet Malibu at 7:01 p.m., minutes before Mobley and Barnes met at the Citgo station. Eventually, Mobley gave Barnes the agreed-upon amount of money and received in exchange 71.15 grams of crack cocaine that the defendant retrieved from an empty potato chip bag that had been placed in a trash receptacle at the service station.

After the completion of the drug transaction, Mobley and other police officers, under the authority conferred by a previously-obtained warrant, conducted a search of the residence at 2628 East Cavanaugh. During that search, the law enforcement officials found an electronic scale, baggies, numerous firearms, including two weapons from which fingerprints matching those of the defendant were lifted, a prescription pill bottle with Barnes's name on the label, and a Samsung T-Mobile phone with the registered number of (517) 505-3913. Later, when arresting the defendant, the officers also recovered a second cellular telephone, this one a blue Nokia model that had registered that its user called Mobley's cell phone at 6:51 p.m. on April 12, 2004, the same time that Mobley received the call from Barnes regarding the plans to meet at the Citgo station for the exchange of cash and crack cocaine.

Based upon this evidence, the jury determined that Barnes was guilty both of distributing at least five grams of crack cocaine on February 12, 2004, and of distributing at least 50 grams of crack cocaine on April 12, 2004. The district judge eventually sentenced the defendant to concurrent 168-month sentences for the two offenses, sentences that were the least severe punishments envisioned by the applicable federal

sentencing guidelines range. The court also imposed alternate, concurrent 120-month sentences on Barnes in the event that "the sentence guidelines [are] deemed unconstitutional." The defendant now appeals from that judgment of conviction and from the 168-month sentences.

## II. DISCUSSION

## A. The Defendant's Conviction

Barnes raises numerous issues in this appeal challenging the admission by the district court of certain testimony and evidence. We review all such challenges to admissibility solely for an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997).

## 1. Evidence Included in Defendant's Motion in Limine

Prior to the beginning of trial, Barnes moved the district court to exclude from the jury's consideration evidence of Barnes's association with the drug deals with Mobley that were brokered by Nicholas Smith because those illegal sales were not charged in the indictment. He also requested that no mention be made of the fact that Smith died as a result of a drug overdose, or that numerous firearms were found in the East Cavanaugh residence during the search of that premises. The district judge conducted a short hearing on the motion before denying the defendant's request in its entirety. Barnes now reprises

his argument that the challenged testimony and evidence were inadmissible due to their overly prejudicial nature.

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Johnson*, 440 F.3d 832, 842 (6th Cir. 2006).

The district judge ruled that the evidence of the prior transactions was admissible to show the necessary background for the narrative of Mobley's dealings with the defendant on February 12 and April 12, 2004. Similarly, the court held that Barnes's announcement concerning Smith's death was relevant background information explaining why Mobley first dealt with the defendant only through an intermediary and then directly. Without such background, the undercover officer's contacts with the defendant would appear to be nothing more than incredibly fortuitous chance encounters. Thus, given the need for an explanation why Mobley would call Barnes's cell phone on February 12, and why Barnes would contact Mobley on April 12 in an effort to sell him additional quantities of crack cocaine, the decision to permit introduction of testimony explaining the interrelationship among Barnes, Mobley, and Smith, combined with the instruction that the jurors not consider testimony of other acts as evidence that the defendant committed the charged offenses, was not an abuse of discretion.

Also without merit is the defendant's objection to testimony concerning the fact that a search of the residence at 2628 East Cavanaugh uncovered the existence of numerous firearms, two of which contained prints later linked to the defendant. Significantly, the

government never intimated that the firearms were possessed illegally. Any evaluation of the propriety of offering that evidence centers, therefore, only upon whether the testimony was relevant and whether its probative value was greater than any potential prejudicial effect. *See* FED. RULES OF EVID. 401 and 403. The proffered testimony satisfied both of these tests. A central issue during the defendant's trial was the identity of the individual who supplied Mobley with crack cocaine. In an effort to prove that Barnes was indeed that individual, the government was justified in emphasizing evidence demonstrating that the supplier left the house at 2628 East Cavanaugh to meet Mobley for the sales and that Barnes himself had a connection with that premises. Trial testimony showing that firearms with the defendant's prints on them and a prescription pill bottle with the defendant's name on the label were found during a search of the East Cavanaugh home clearly was probative of Barnes's connection with the crimes and had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable . . . than it would be without the evidence." FED. RULE OF EVID. 401. The district court thus did not abuse its discretion in ruling this evidence admissible at trial.

## 2. Fingerprint Evidence

In an additional challenge to the relevance of the firearms evidence, the defendant raises two concerns about the fingerprint testimony offered by government witnesses. Barnes first asserts that the expert testimony of witness Michele Glasgow should have been excluded because of the government's delay in identifying the substance of that

witness's findings. Second, the defendant alleges that Glasgow's testimony concerning peer review of her findings presented a confrontation clause violation that requires reversal of Barnes's convictions.

In raising his first challenge to the admission of the government's fingerprint evidence, the defendant importantly does not claim that the prosecution withheld information ascertained by its expert witness. Rather, Barnes complains that the disclosure made by the government came too near the start of the trial to allow for adequate testing of the prosecution's expert's results. However, the defense was aware nine or ten days prior to trial that Barnes's fingerprints had been found on two of the firearms discovered during the search of 2628 East Cavanaugh. Not only did the defendant fail to secure his own expert to challenge the government's expected testimony within that time, but Barnes did not even request a further continuance from the court to examine the information that he might question. Instead, the defendant sought only the total exclusion of the fingerprint evidence, the most drastic sanction available for any discovery violation. Under these circumstances, the district court did not abuse its discretion in allowing the challenged evidence to be admitted at trial.

Barnes raises an objection to testimony offered by expert witness Glasgow that the Michigan State Police Crime Laboratory never issues "an analysis of fingerprints that has not had a second analysis confirming the original analysis." According to the defendant's argument, such a statement not only indicates that a second examiner who was not made

available for cross-examination existed, but also that the unavailable expert necessarily verified the results reached by Glasgow herself. Even assuming that such testimony does indeed constitute a violation of the protections afforded by the confrontation clause of the Sixth Amendment to the United States Constitution, that error in this case is harmless beyond a reasonable doubt. Not only would the testimony of the absent fingerprint analyst have been merely cumulative of the testimony offered by the live witness available to the defense for cross-examination, but the evidence of Barnes's guilt of the offenses with which he was charged was overwhelming. One fingerprint expert already tied the defendant to the home on East Cavanaugh from which the drug dealer operated, and a prescription pill bottle and visual surveillance also helped identify Barnes as the individual from whom undercover officer Mobley purchased crack cocaine. Even more damning, however, was the eyewitness testimony of Mobley himself, one of the participants in the transactions, that Barnes was indeed the individual who supplied the contraband substances. This evidence, coupled with additional information gleaned from cell phone displays, unerringly connected the defendant with the illegal sales. Consequently, the district court did not commit reversible error in permitting witness Glasgow's testimony to be considered by the finders of fact.

## 3. Evidence Gathered From Defendant's and From Mobley's Cell Phones

Barnes next contends that the district judge committed error in allowing Officer Mobley to testify that Mobley's cell phone registered the number of one of Barnes's cell

phones as a previously-dialed number, and that yet another cell phone recovered from the defendant indicated that someone using that second phone had placed a call to Mobley at the same time the officer received a call from Barnes regarding plans for a drug sale on April 12, 2004. The defendant contends that admission of such evidence was improper because Mobley was not qualified as an expert in cell phone technology and should not, therefore, have been allowed to offer his opinion regarding the origin and destination of particular telephone calls. In the absence of a contemporary objection at trial, we review this issue for plain error only.

A review of the record indicates that Mobley's testimony did not involve the offering of any expert opinion. *See* FED. RULE OF EVID. 702. Instead, the witness merely recounted information retrieved from various cell phones in a procedure used and relied upon not by experts in telephonic technology, but by literally millions of cell phone users. Simply relating to a jury the information gained from a function performed, known, and understood by most members of modern society did not render Mobley's testimony improper.

### B. The Defendant's Sentence

Finally, Barnes contends that the district court erred in imposing concurrent 168-month sentences upon him because those sentences were calculated and imposed prior to the United States Supreme Court's decision in *Booker*, at a time when the sentencing guidelines were still regarded as mandatory. The defendant now requests that this panel remand his case to the district court with a directive to the district judge to impose the 120-

month sentences that were given as alternatives under the temporary rule announced in *United States v. Koch*, 2004 WL 1870438 (6th Cir. August 13, 2004) (en banc).

The government concedes that the guideline sentences cannot stand in the aftermath of *Booker*. Citing *United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005), however, the United States also submits that the 120-month sentences were equally invalid because the district judge arrived at that punishment by assuming not that the guidelines are advisory, but rather that they are unconstitutional in their entirety. But, whatever the district court's assumption may have been, our response to *Booker* has been consistent. In every case in which a *Booker* remand has been required, we have directed the district court to reconsider the sentence, treating the guidelines as advisory only, and evaluating the various factors listed in 18 U.S.C. § 3553(a) in determining a sentence that is reasonable and appropriate. Because the 168-month sentences ordered by the district judge in this case were admittedly erroneous under subsequent, applicable case law, this case must be remanded for re-sentencing. At that proceeding, the district court can explain on the record how the alternate 120-month punishments further the sentencing purposes mentioned in § 3553(a).

## III. <u>CONCLUSION</u>

For the reasons set out above, we AFFIRM the defendant's conviction in this matter, VACATE the sentencing order, and REMAND the case to the district court for re-sentencing specifically in light of the sentencing factors listed in 18 U.S.C. § 3553(a).

*05-1072*
*United States v. Barnes*